**STATE of Missouri, Plaintiff–Respondent,**

v.

**Nick NODINE, Defendant–Appellant.**

**No. 16401.**

Missouri Court of Appeals,
Southern District,
Division One.

June 4, 1991.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Janet M. Thompson, Columbia, for defendant-appellant.

MAUS, Presiding Judge.

Defendant Nick Nodine was charged with the second degree murder of Cecil Foster by impaling his rectum with a broomstick with the purpose of causing serious physical injury to Cecil Foster, § 565.021.1. A jury found defendant guilty of voluntary manslaughter, § 565.023.1(1), and assessed his punishment at imprisonment for 10 years. He was sentenced in accordance with the verdict. Defendant states one point on appeal. The following is an outline of the facts necessary for consideration of that point.

Defendant was an inmate at the Barry County Jail. He served as a trusty. As trusty, he took each of the other inmates to the shower. On July 24, 1988, defendant unlocked the cell of Cecil Foster last. Foster did not want to go to the shower. Defendant kicked Foster approximately five to six times and ordered Foster to get undressed. Defendant shoved Foster into the shower, and held Foster's head under scalding water. Defendant held him under the water until Foster passed out. When Foster started to rise from the floor, defendant placed his foot on the back of Foster's head and slammed it onto the concrete floor. Defendant then violently shoved the handle of a squeegee up Foster's rectum. Defendant asked Foster, who was incarcerated for molesting a twelve-year-old boy, " 'How do you think that boy felt?' "

One of the other inmates reported the incident later that evening to a deputy sheriff. When the deputy sheriff inquired, Foster denied there had been a fight, and assured him that he felt fine. The deputy sheriff checked on Foster twice the next day and Foster twice insisted that there had been no problem. Later that day, an inmate requested the deputy dispatcher to call a doctor because Foster did not appear to be breathing. A deputy sheriff inspected Foster and found that he had died. The cause of death was determined to be toxic shock from an overwhelming infection caused by the injury to the rectum.

At the request of the defendant, the trial court submitted to the jury the defendant's guilt of voluntary manslaughter in the form of MAI–CR 3d 313.08. Paragraph Second submitted option [3], "that it was the defendant's purpose to cause serious physical injury to Cecil Foster". The trial court also submitted to the jury the defendant's guilt of conventional second degree murder in the form of MAI–CR 3d 313.04. That instruction included Paragraph Third submitting a finding "that defendant did not do so under the influence of sudden passion arising from adequate cause".

The defendant's sole point is that "the evidence was insufficient to prove beyond a reasonable doubt that appellant committed voluntary manslaughter, in that there was no evidence from which the jury could find that appellant acted under the influence of sudden passion arising from adequate cause". The defendant supports that point with an argument based upon the statutory definition of voluntary manslaughter. The relevant definition of voluntary manslaughter is:

"A person commits the crime of voluntary manslaughter if he:

(1) Causes the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause; or". § 565.023.1(1).

He then argues that causing the death of another "under the influence of sudden passion arising from adequate cause" is a

statutory element of the offense of voluntary manslaughter. He concludes there was no evidence of sudden passion and therefore the evidence fails to support the conviction.

The defendant reinforces that argument with the subsidiary argument that it was error to submit voluntary manslaughter as a lesser-included offense of conventional second degree murder in the absence of evidence to establish the elements of voluntary manslaughter. He cites *State v. Anding*, 752 S.W.2d 59 (Mo. banc 1988).

Even conceding there was no evidence of "sudden passion", those two arguments have been considered and denied.

"In addition, § 545.030.1, RSMo 1986, has been the law in this state for more than one hundred years. It provides, in part, that no criminal 'trial, *judgment* or other proceedings *be ... in any manner affected:*

\* \* \* \* \* \*

(16) For *any error committed at the instance or in favor of the defendant;* nor

(17) *Because the evidence shows or tends to show him to be guilty of a higher degree of the offense than that of which he is convicted....*'
(Emphasis added.)

If the trial court erred in giving the manslaughter instruction, it was error committed at the instance of defendant, and most certainly he considered it in his 'favor.' Hence, it should not 'in any manner' affect his conviction. Section 545.030.1(16); [*State v.*] *Nelson*, 459 S.W.2d [327] at 334 [Mo.1970]; *State v. Davis*, 608 S.W.2d 437, 441–442 (Mo.App. 1980). The conviction for manslaughter may be upheld under these circumstances even though the evidence tends to show defendant to be guilty of a higher degree of homicide. Section 545.030.-1(17).

\* \* \* \* \* \*

We are unwilling to allow a defendant who urges upon the trial court a manslaughter instruction, which urging bespeaks a purpose to appeal to the jury's sense of mercy or mitigation, and then having taken the benefit of the same and thus having avoided conviction of the greater offense turns 180 degrees and entreats the appellate court to nullify the manslaughter conviction because of such 'erroneous' instruction and thus adroitly escape conviction on any count." *State v. Leisure*, 796 S.W.2d 875, 878, 879 (Mo. banc 1990). (Footnote omitted).

The defendant's sole point is denied and the judgment is affirmed.

PREWITT and CROW, JJ., concur.