STATE of Missouri, Respondent,

v.

Robert GASTON, Appellant.

No. WD 48517.

Missouri Court of Appeals,
Western District.

March 28, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 1995.

Application to Transfer Denied
May 30, 1995.

Laura G. Martin, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and
LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

Robert Gaston (Appellant) appeals a judgment following a jury verdict, finding him guilty of voluntary manslaughter, and armed criminal action. He received two consecutive fifteen year sentences.

In December of 1992, Appellant's brother threw a party at a club in Jackson County. Around midnight, Appellant's brother, who was a member of the "Bloods" gang, started arguing with a girl who was a member of the "Crips" gang. During that argument, Appellant's brother and the girl exchanged heated gang hand signs. The girl then told a few male Crips members about the argument and they surrounded and confronted Appellant's brother.

The victim, Howard Allen, was one of the Crips boys who approached Appellant's brother. Later, when Allen tried to leave the club, between five and seven people, including Appellant, surrounded him and began to beat and kick him. Appellant took out a .38 handgun and proceeded to pistol whip Allen.

Allen was not able to defend himself or fight back after the attack, and lay on the floor. After a few moments, Appellant declared, "Fuck this shit," and shot Allen in the head. The bullet entered the left side of Allen's head, fractured his skull, passed through his brain, and exited the right side of his head. The fractured skull, caused by the bullet wound, was listed as the cause of death.

After the shooting, Appellant fled the scene. There was a discrepancy at trial about the following information: 1) there was testimony that Appellant later bragged to some friends on the school bus about "shooting some nigger on 77th street"; but 2) Appellant denied this at trial, saying he shot Allen accidentally.

Appellant presents three points on appeal, including: 1) the trial court erred in finding him guilty of voluntary manslaughter because there was insufficient evidence that he caused Allen's death as a result of sudden passion arising from adequate provocation; 2) the trial court plainly erred in allowing reference to the gangs (Bloods and Crips) in

State's closing argument; and 3) the trial court erred in admitting photographs of the victim's head wound, because such were overly prejudicial to Appellant.

### I.

■ Appellant first claims the trial court erred in allowing a verdict of voluntary manslaughter when there was insufficient evidence to support a charge that he killed in the heat of passion from adequate provocation.

■ This court only determines whether the evidence is sufficient to support the verdict, not whether the verdict was against the weight of the evidence. *State v. Williams,* 623 S.W.2d 552, 553 (Mo.1981). This court must consider the evidence and all reasonable inferences therefrom in the light most favorable to the verdict and must disregard all inferences to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993); *State v. McMahan,* 821 S.W.2d 110, 111 (Mo.App. 1991).

Voluntary manslaughter is "knowingly causing the death of another person, or with the purpose of causing serious physical injury to another person, causing the death of another person, under the influence of sudden passion arising from adequate cause." §§ 565.021.1(1), 565.023.1(1) RSMo 1986. Appellant argues that the evidence presented at trial: (1) fails to prove sudden passion; and (2) fails to prove he shot Allen with the purpose of causing death or serious bodily injury.

The problem with this argument is that Appellant is now claiming that the evidence adduced at trial showed he committed a higher offense than that for which he was convicted, voluntary manslaughter. If Appellant's point is taken literally, he is saying he is more likely guilty of second degree murder rather than voluntary manslaughter, because of the absence of the "sudden passion & adequate cause" elements.

■ Appellant's claim must fail, due to a "defendant's protection" statute, which precludes the state from charging defendant with a greater crime if the evidence supports

the guilt, but the defendant is on trial for a lesser offense. § 545.030.1(17) RSMo 1986. More specifically, the statute provides that no criminal trial may be in any manner affected because the evidence shows the defendant to be guilty of a higher degree of the offense for which he was convicted. *Id.* In applying § 545.030.1(17) to this case, the fact that the evidence may show Appellant to be guilty of a higher degree of homicide than that for which he was convicted, will not affect the outcome of the trial on the lesser charge.

In *State v. Nodine,* 810 S.W.2d 114 (Mo. App.1991), the appellant complained that he had been convicted of voluntary manslaughter based upon evidence that failed to show that he acted as a result of sudden passion. The court held that the conviction was to be upheld even though the evidence tended to show his guilt of a higher crime. *Id.* at 116.

Also of importance to Appellant's claim, is the fact that Appellant himself submitted to the court a voluntary manslaughter jury instruction. The State submitted only a first degree murder instruction, and the trial court instructed the jury on voluntary manslaughter. In *Nodine,* supra, the court held that the giving of the voluntary manslaughter instruction as submitted by defendant was "error committed at the insistence of defendant, and most certainly he considered it in his 'favor'." *Id.* 810 S.W.2d at 116. Nodine's conviction was upheld.

*Nodine* and § 545.030.1(17) accordingly, rule the case at bar precludes Appellant from relief on this claim.

The point is denied.

## II.

█ Appellant's next point claims the trial court plainly erred when it failed to *sua sponte* declare a mistrial or failed to instruct the jury to disregard language used by the State in closing argument referring to the shooting as "gang related" and mentioning the names of the gangs.

Because Appellant made no objection to the above argument at trial, this court may review his point for plain error only. *State v. Gustin,* 826 S.W.2d 409, 414 (Mo.App.1992);

Rule 30.20. Rule 30.20 mandates reversal on this point only if a manifest injustice has occurred as a result of the trial error. Demonstrable prejudice alone is insufficient for relief under this rule; *State v. Schaal,* 806 S.W.2d 659, 664 (Mo. banc 1991).

In reviewing closing arguments, note the trial court is vested with considerable discretion to control the content of closing argument. *State v. Armbruster,* 641 S.W.2d 763, 766 (Mo.1982). This court will not reverse unless Appellant establishes that the unwarranted argument had a decisive effect on the jury's determination. *State v. Long,* 768 S.W.2d 664, 666 (Mo.App.1989); *citing State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc 1982).

Appellant complains here about State's argument that he was on the side of the Bloods and turned the fight into a gang war. Appellant claims this argument injected into the jurors' minds matters not proper for their consideration, and improperly appealed to their passions and prejudices; so much so that Appellant was denied his right to a fair trial and due process of law. He cites two California cases where the court found error in counsel references to "gangs" as made to a jury.

In *People v. Cardenas,* 31 Cal.3d 897, 184 Cal.Rptr. 165, 647 P.2d 569 (1982), the Court held "given widespread publicity concerning violence between rival youth gangs, the jury may well have assumed that members of the 'El Flores' gang were accustomed to using violence to further their interests." *Id.* 184 Cal.Rptr. at 169, 647 P.2d at 573. The Court concluded by holding a real danger existed that the jury would infer the defendant had a criminal disposition simply because he was a member of a gang. *Id.* 184 Cal.Rptr. at 168, 647 P.2d at 572.

In *People v. Luperello,* 187 Cal.App.3d 410, 231 Cal.Rptr. 832 (4th Dist.1986), the court held, "We must recognize that the prejudicial effect of inadmissible gang membership evidence lies in its tendency to suggest that a defendant is the type of person predisposed to commit violent acts of the type engaged in by the gang to which he belongs." *Id.* 231 Cal.Rptr. at 840.

Appellant claims that the above cases preclude the State's comments because such inflammatory remarks improperly served to tie Appellant to the criminal conduct of a gang to which he did not really belong or associate.

In the cited cases, several distinctions may be made from the case at bar. First, there was no evidence in those cases to show that the crimes were, in any way, results of gang activity. Second, there was no direct evidence linking defendant(s) to the crime. At the case at bar, Appellant admits shooting Allen, and there were also witnesses to the shooting, so identity of the perpetrator is not an issue. Most importantly, the two California cases deal with evidentiary questions, while the case at bar deals only with closing arguments. The issue here is the propriety of the State's argument, not the admission of evidence.

The State's closing argument advanced two theories: (1) that Appellant joined a gang fight to aid his brother, who was a gang member; and (2) Appellant escalated the seriousness of the fight by bringing out and shooting a gun.

All of the evidence at trial showed the fight was indeed gang-related. Testimony from both sides claimed as much. Appellant also testified that he became involved in the fight by exchanging blows with one of the rival gang members. In addition, the evidence showed that the fight was a fist fight until Appellant shot Allen. It would be hard for this court to hold the State was unwarranted in arguing that Appellant escalated the seriousness of the fight by using the gun.

Although the reference to the gangs may well have been overdone, there is ample evidence on the record to back up the classification of the fight as "gang related." In addition, under plain error, Appellant has proved no prejudice and certainly no "manifest injustice" resulting from this referral, when *he himself* referred to the fight as being gang related.

As such, Appellant has failed to establish that the references had a decisive effect on the jury's judgment. *Long,* 768 S.W.2d at 666; *Newlon,* 627 S.W.2d at 616.

The point is denied.

## III.

In Appellant's final point, he claims the trial court erred in admitting a certain photograph of Allen's head wound (taken at close range), because the photo inflamed the passions and prejudices of the jury.

This court reviews this point for abuse of discretion, as a trial court has broad discretion in determining the admissibility of a photograph. *State v. Schneider,* 736 S.W.2d 392, 403 (Mo. banc 1987).

At trial, the medical examiner who performed the autopsy on Allen described the photo sought to be introduced:

Exhibit eleven shows you a picture of Allen's head. This was as he looked when we received him from the Intensive Care Unit of the hospital. The most striking things you see are the tubes going into his mouth and into his nose where they tried to save him.

The other feature here is he has a lot of swelling and bruising around the right eye. What's happened there is that his skull has been fractured from the gunshot wound.

Generally, a photograph is admissible if it is relevant to a material issue or if it enables the jury to better understand a witness' testimony. *State v. Smith,* 781 S.W.2d 761, 766 (Mo. banc 1989), *vacated, Smith v. Missouri,* 495 U.S. 916, 110 S.Ct. 1944, 109 L.Ed.2d 306 (1990), *reaffirmed State v. Smith,* 790 S.W.2d 241 (Mo. banc 1990). A photograph is relevant if it tends to prove any element of the charged offense, including proof of the victim's identity or the nature and condition of the victim's wounds. *State v. Schneider,* 736 S.W.2d at 403.

The Supreme Court of Missouri has definitively spoken on this issue in *State v. Feltrop,* 803 S.W.2d 1, 10 (Mo. banc 1991), when it held where an inflammatory photo is relevant, it should nonetheless be admitted, except where the situation is so unusual that the prejudice overrides its probative value. *Id.* At issue in *Feltrop* were photographs

showing the torso of the victim as discovered in the trunk of a car, body parts as discovered in a garbage bag, and close-ups of various wounds. The Court held the photos admissible, ruling, "Defendants may not so easily escape the brutality of their own actions; gruesome crimes produce gruesome, yet probative, photographs." *Id.* at 10, 11.

In the case at bar, the picture was relevant to show the identity of Appellant's victim, to show the nature and extent of the skull fracture, and to aid the jury in understanding the medical examiner's testimony concerning the skull, fracture, which was caused by the shooting. The photos in *Feltrop, supra,* were far more gruesome than in the case at bar, giving Appellant's argument here far less credence.

*Smith, Schneider* and *Feltrop, supra* would not preclude admission of this photo from evidence, and neither will this court, as the photo was both relevant and not overly prejudicial.

The point is denied.

The judgment is affirmed.

All concur.